IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE OF HAWAII, DEPARTMENT OF EDUCATION., | ) ) ) | CIVIL NO. 08-00499 JMS/LEK |
| Plaintiff, | ) ) | ORDER AFFIRMING THE HEARINGS OFFICER'S DECISION |
| vs. | ) ) ) | |
| ZACHARY B., by and through his Parent JENNIFER B., | ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

## ORDER AFFIRMING THE HEARINGS OFFICER'S DECISION

## I.  INTRODUCTION

On October 15, 2008, Plaintiff Hawaii Department of Education

("Plaintiff" or "DOE") filed a Complaint under the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1415, Hawaii Revised Statutes ("HRS")

§ 91-14, and the corresponding Hawaii Administrative Rules against Zachary B.

("Zachary"), by and through his parent, Jennifer B. ("Mother") (collectively,

"Defendants" or "Family"), appealing the Administrative Hearings Officer's

September 16, 2008 Findings of Fact, Conclusions of Law and Decision

("September 16, 2008 Decision").[1]

> Zachary is a ten-year old child who has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and depression.  In her September 16, 2008 Decision, the Hearings Officer found (1) that Zachary is eligible for special education and related services under the Other Health Impairment ("OHI") category and (2) that the DOE denied Zachary an offer of a free appropriate public education ("FAPE") when they did not find him eligible for special education at the October 2007 eligibility meeting.  Based upon those findings, the Hearings Officer ordered that the DOE immediately develop an  Individual Education Plan ("IEP") with sufficient special education and related services to meet Zachary's needs, that Zachary be awarded compensatory services in the form of one-to-one weekly private tutoring for fifteen months, and deemed Defendants the prevailing party.

> On appeal, the DOE asserts that the Hearings Officer erred by (1) finding that Zachary was eligible for special education and related services; (2) ordering fifteen months of compensatory education; (3) improperly delegating

---

[1]  Plaintiff originally filed its complaint in the Circuit Court of the First Circuit of the State of Hawaii, and Defendants removed to this court on November 3, 2008.  Doc. No. 1.

her authority to Defendants' experts; (4) violating the IDEA's impartiality requirement; and (5) finding that Defendants were the prevailing party. Specifically, Plaintiff argues that Zachary is not eligible for special education and related services because he is an average student and that the Hearings Officer abused her discretion in awarding compensatory education. Defendants contend that the September 16, 2008 Decision that Zachary is eligible for special education and related services was correctly decided and request that this court award compensatory education in the form of placement at Assets School.

Based on the following, the court AFFIRMS the September 16, 2008 Decision and DENIES Defendants' request to place Zachary at Assets School.

## II. **BACKGROUND**

Zachary is a ten-year old diagnosed with ADHD and depression, who has attended Mauka Lani Elementary School ("Mauka Lani") from kindergarten through the third grade. Admin. Record on Appeal ("ARA") Ex. 24, at 163, 166-67, 169. Zachary was in the third grade during the 2007-2008 school year. *Id.* at 166.

///

///

///

3

## A.      First Evaluation of Zachary (Second Grade)

By letter dated September 27, 2006, Mother requested that Zachary be tested for learning disabilities.  *Id.* at 166-67; Pl.'s Ex. 1.[2]  On October 12, 2006, Zachary's Student Support Team ("Support Team") met for the first time.  ARA Ex. 24, at 166; Pl.'s Ex. 3.[3]  At that time, the Support Team rejected the possibility of conducting an evaluation to determine possible special education services for Zachary because he was making adequate academic progress with accommodations.  ARA Ex. 24, at 166; Pl.'s Exs. 3-5.

In February 2007, Mother told Services Coordinator Hirasaki-Putnam that Zachary was diagnosed with depression, taking medication, and that he might have ADHD.  ARA Ex. 24, at 167.  Based upon Mother's assertion that Zachary might have ADHD and at Mother's request, Mauka Lani's Behavioral Health Specialist Bernadette Jambaro ("Behavioral Specialist Jambaro") and Zachary's

---

[2]  Plaintiff's exhibits refer to Respondent's exhibits as part of the administrative record on appeal; Defendants' exhibits refer to Petitioners' exhibits as part of the administrative record on appeal.

[3]  Mauka Lani Vice Principal Kawai Tao ("Vice Principal Tao"), Student Services Coordinator Sharleen Hirasaki-Putnam ("Services Coordinator Hirasaki-Putnam"), Second Grade Teacher Corrie Ann Fong ("Second Grade Teacher Fong"), Special Education Teacher Cynthia Leever ("Special Education Teacher Leever"), Mauka Lani Counselor Tammy Sakato ("Counselor Sakato"), and Jennifer and Noel B. (collectively, "Parents") attended the meeting. Pl.'s Ex. 3.

second grade teacher Kehau Samuela ("Second Grade Teacher Samuela")[4]

conducted a series of observations, evaluations, and tests on Zachary.[5]  *Id.* at 167-

75.[6]

By letter dated March 16, 2007, Zachary's psychiatrist confirmed his

diagnosis of ADHD.  *Id.* at 169; Pl.'s Ex. 8.

The Support Team held a meeting on April 10, 2007 and

recommended that an initial evaluation of Zachary be conducted because he was

having trouble focusing on tasks and had poor organizational skills.[7]  ARA Ex. 24,

at 170; Pl.'s Exs. 11-13.  As part of the initial evaluation, Behavioral Specialist

Jambaro conducted more observations and evaluations of Zachary and

Psychologist Barra evaluated Zachary.  ARA Ex. 24, at 170-73.  The DOE also

---

[4]  Second Grade Teacher Fong was Zachary's teacher during the first semester of second grade until she went on maternity leave, and Second Grade Teacher Samuela -- a student teacher during the first semester -- took over for Fong during the second semester of the 2006-2007 school year.  ARA Ex. 24, at 163, 166 n.1.

[5]  Prior to February 16, 2007, Parents requested that Second Grade Teacher Samuela complete an evaluation of Zachary, *see* ARA Ex. 24, at 168, and on April 3, 2007, Mother asked Mauka Lani to evaluate Zachary for academic, social, emotional, and behavioral concerns.  *Id.* at 169; *see also* Pl.'s Ex. 9.

[6]  For a detailed list of all of the observations, evaluations, and tests of Zachary, see the September 16, 2008 Decision.

[7]  Vice Principal Tao, Services Coordinator Hiraski-Putnam, Second Grade Teacher Samuela, Special Education Teacher Leever, School Psychologist Holly Barra ("Psychologist Barra"), Counselor Sakato, Parents, and Parents' Advocate Kathleen English ("Parents' Advocate English") attended the meeting.  Pl.'s Ex. 11.

conducted a school social work report that included family history and adaptative

behavior information[8] from Mother and Second Grade Teacher Samuela.  *Id.* at

173-75.

**B.    The June 2007 Eligibility Meeting**

On June 7, 2007, the last day of Zachary's second grade year, the

DOE held the first eligibility meeting.  *Id.* at 175; Pl.'s Ex. 26.  At the meeting, the

eligibility team ("eligibility team")[9] reviewed and discussed the results of

Zachary's initial evaluation,[10] his report cards, teacher observations, and parent

input to determine if Zachary qualified for special education and related services

under the Specific Learning Disability ("SLD") or OHI categories.  ARA Ex. 24, at

175; Pl.'s Exs. 26, 29.  The DOE eligibility team members determined that there

was no evidence of an SLD.  ARA Ex. 24, at 175; Pl.'s Ex. 29 (Prior Written

Notice of June 7, 2007 eligibility meeting).  As for the OHI category, the eligibility

---

[8]  "Adaptive behavior" is the performance of daily activities that a child needs to take care of himself and to get along with others.  ARA Ex. 24, at 173 n.15.

[9]  Vice Principal Tao, Services Coordinator Hirasaki-Putnam, Second Grade Teacher Samuela, Special Education Teacher Leever, Psychologist Barra, Counselor Sakato, Speech Pathologist Jill Koga, Behavioral Specialist Jambaro, School Social Worker Kathy Piscusa, Clinical Psychologist Stacey Yim ("Psychologist Yim"), Parents, and Parents' Advocate English attended the meeting.  Pl.'s Ex. 26.

[10]  Zachary's initial evaluation consisted of a number of standardized tests, evaluations, and observations taken during the second semester of Zachary's second grade year by Behavioral Specialist Jambaro, Psychologist Barra, and Second Grade Teacher Samuela as well as information collected from Mother.  *See* ARA Ex. 24, at 175.

team determined that although Zachary had ADHD, he was not eligible for special

education and related services because the results of the attention screening

assessments determined that his inattention was "very mild" and his teachers said

he was easily redirected.  *Id.*

Also on June 7, 2007, Second Grade Teacher Samuela developed a

general education plan with supports and modifications for use in Zachary's third

grade class ("Action Plan").  ARA Ex. 24. at 175, 190-91; Pl.'s Ex. 31.  The

Action Plan included preferential seating, modified spelling assignments, an

incentive chart, verbal redirection, and other accommodations.  *Id.*

## C.   Independent Education Evaluation and More DOE Evaluations (Third Grade)

Based upon their disagreement with the DOE's evaluation of Zachary,

Family requested an Independent Education Evaluation ("Independent

Evaluation") at public expense on June 15, 2007.  ARA Ex. 24, at 177; *see also*

Pl.'s Ex. 33.  On August 6, 10, and 14, 2007, Psychologist Colin B. Denney, Ph.D.

("Dr. Denney"),[11] conducted the Independent Evaluation, which consisted of

testing and evaluating Zachary and reviewing information provided by Mother.

---

[11]  Mauka Lani recommended Dr. Denney for the Independent Evaluation.  Pl.'s Ex. 36.

ARA Ex. 24, at 177-78; *see also* Pl.'s Ex. 43 (Dr. Denney's October 10, 2007

Independent Evaluation report).

The Independent Evaluation report concluded that Zachary's ADHD

compromised his day-to-day functioning in school.  ARA Ex. 24, at 179; Pl.'s Ex.

43.  The report recommended conducting a functional behavioral assessment,

avoiding punitive consequences (*e.g.*, making Zachary do his homework during

recess and sending incomplete work home), and providing ongoing and intensive

therapy for mood-related challenges and family support.  *Id.*  Also, Dr. Denney

"strongly disagreed with the DOE's use of continuous performance tests as a basis

for making inferences about attention problems and its finding that [Zachary's]

attention problems were mild."  ARA Ex. 24, at 179.[12]

During the first semester of Zachary's third grade year, his third grade

teacher Shay Sing ("Third Grade Teacher Sing") observed Zachary and

administered a reading assessment.  *Id.* at 179-81; Pl.'s Ex. 75 (Third Grade

Teacher Sing's observations); Defs.' Ex. 10 (reading assessment results).

---

[12]  Dr. Denney also conducted additional tests on Zachary in February 2008.  *See* Defs.'
Ex. 48.

**D.     October 2007 Eligibility Meeting**

Parents, Parents' Advocate English, Dr. Denney, Rebecca Lynn-Yee, Ph.D. ("Dr. Lynn-Yee"), Principal Shelley Ferrara ("Principal Ferrara"), Services Coordinator Hirasaki-Putnam, Psychologist Yim, Second Grade Teacher Samuela, Third Grade Teacher Sing, Mauka Lani Counselor Arisa Domingo ("Counselor Domingo"), Vice Principal Tao, and two special education teachers at Mauka Lanai attended the October 11, 2007 eligibility meeting.[13]  ARA Ex. 24, at 182 n.25; Pl.'s Ex. 44.  After Parents, Third Grade Teacher Sing, and Dr. Denney shared their updates on Zachary's performance, the October 2007 eligibility team agreed that he did not qualify as disabled under the SLD category.  ARA Ex. 24, at 182, 188.

As to Zachary's eligibility under OHI, the October 2007 eligibility team agreed to the following: (1) that Zachary had ADHD, which caused limited strength, vitality, or alertness, including a heightened alertness to environmental stimuli; (2) information for eligibility was gathered from a variety of sources; and (3) Zachary's special education eligibility is not due to lack of instruction in reading, math, or limited English proficiency.  *Id.* at 182, 189.  The DOE and

---

[13]  At this time, Zachary was about two and a half months into the third grade.  ARA Ex. 24, at 188.

Parents, however, disagreed over the effect of Zachary's ADHD on his educational performance -- Parents and Dr. Denney believed that his disability adversely affected his educational performance; the DOE members did not.  *Id.*  Based on the evaluations and testing, Principal Ferrara determined that Zachary was not eligible for special education under OHI because his reading diagnostic scores showed that he was within average range in all academic and cognitive areas and because Third Grade Teacher reported that he was functioning with the other students.  *Id.*; *see also* Pl.'s Ex. 44.[14]

At this point, Parents and Dr. Denney left the meeting.  ARA Ex. 24, at 183.[15]  The DOE members remained and reviewed Dr. Denney's Independent Evaluation recommendations.  *Id.*  The DOE members rejected Dr. Denney's primary recommendation -- that the DOE conduct a functional behavioral assessment -- because they determined that Mauka Lani already knew how to

---

[14]  Principal Ferrara testified that Zachary's Action Plan was allowing him to make progress in the regular classroom -- specifically, that the accommodations allowed him to access his education.  ARA Ex. 24, at 182-83; *see also* Pl.'s Ex. 48 (noting that although Zachary was not eligible for specially designed instruction under the IDEA, he would be offered extra help in the "Intervention Room" to improve his reading skills and referred to the "Homework Club").

[15]  By all accounts this meeting was uncomfortable and tense for all who attended -- Parents were extremely angry upon learning that Zachary did not qualify for special education services under OHI, and Mother used some foul language before Parents, Dr. Denney, and some others left the meeting.  ARA Ex. 24, at 183.

address Zachary's problematic behaviors (via the Action Plan) and that Zachary

did not exhibit signs of depression at school.  *Id.*

After the DOE found Zachary ineligible for special education,  Mother

filed a Request for an Impartial Due Process Hearing with the DOE pursuant to the

IDEA on October 26, 2007.  ARA Ex. 1.  At this time, Parents also began

providing Zachary with weekly private tutoring sessions with Dr. Lynn-Yee

because he had fallen behind in class, was not performing at grade level, and was

not receiving adequate assistance in school.  ARA Ex. 24, at 185, 197.

On or about January 3, 2008, Mauka Lani learned that since October

2007 Parents had kept Zachary home from school one day every other week to

receive private tutoring and therapy sessions.  *Id.* at 185.

**E.      September 16, 2008 Decision**

The Hearings Officer heard evidence from the parties for eight days in

April and June 2008 to consider whether the DOE: (1) failed to fulfill its obligation

to Zachary under the Child Find provision of the IDEA; (2) violated Section 504 of

the Rehabilitation Act of 1973 ("Section 504") by failing to test and identify

Zachary as a student with a disability; (3) during its initial evaluation of Zachary,

failed to follow the testing protocol in an effort to deny him special education and

related services; and (4) during the October 2007 eligibility meeting, disregarded

11

expert recommendations and input that demonstrated Zachary's eligibility for special education under OHI category.[16] *Id.* at 165-66.

To answer these questions, the Hearings Officer considered the numerous evaluations and tests of Zachary conducted by his teachers and DOE and Mauka Lani personnel throughout his second and third grade years; the observations of his second and third grade teachers (including his report cards); the results of the Independent Evaluation conducted by Dr. Denney; and Parents' observations. *Id.* at 195. The Hearings Officer also considered second and third grade modifications and accommodations as part of his Action Plan, *see id.* at 190-94, and that, as of October 2007, Zachary was absent from school regularly in order to attend one-on-one tutoring sessions. *Id.*

The Hearings Officer concluded, based on a preponderance of all the evidence presented, that Zachary's ADHD "adversely affected his education performance on a frequent, if not daily basis" and that "[t]he adverse effect on [Zachary's] educational performance was not minimal." *Id.* The Hearings Officer found that the accommodations and supports used in Zachary's second and third

---

[16] The Hearings Officer heard testimony from the following witnesses: Parents' Advocate English, Father, Mother, Dr. Denney, Services Coordinator Hirasaki-Putnam, Third Grade Teacher Sing, Dana Tanigawa, Behavioral Health Specialist Jambaro, Second Grade Teacher Samuela, Counselor Domingo, Psychologist Barra, Principal Ferrara, and Psychologist Yim. The parties submitted written closing briefs. *See* ARA Exs. 20-21.

grade years were insufficient and did not allow him access to a general education

curriculum, and that the eligibility team should have found Zachary eligible for

special education and related services under the OHI category at the October 2007

eligibility meeting.[17]  *Id.*  Based upon the DOE's failure to identify Zachary and

find him eligible for special education services, "equitable considerations," and

Zachary's performance level, the Hearings Officer ordered compensatory

education in the form of fifteen months of weekly, one-on-one private tutoring

sessions with Dr. Lynn-Yee or an individual determined by Dr. Lynn-Yee or Dr.

Denney, tailored to Zachary's unique needs.  *Id.* at 196-98.

**F.     The Appeal**

Currently before the court is the DOE's April 9, 2009 appeal from the

Hearings Officer's September 16, 2008 Decision.  On April 30, 2009, Defendants

filed their Opposition Brief.  On May 11, 2009, the DOE filed their Reply Brief.  A

hearing was held on June 1, 2009.

---

[17]  The Hearings Officer also found that the DOE had sufficient information to suspect
that Zachary was a child with a disability and might be in need of special education and related
services under the Child Find provisions of the IDEA.  ARA Ex. 24, at 196.  The Hearings
Officer, however, concluded that Family did *not* prove by a preponderance of the evidence that
the DOE: (1) violated Section 504 by failing to test and identify Zachary as a student with a
disability; and (2) during its initial evaluation, failed to follow testing protocols in an effort to
deny Zachary eligibility for special education and related services.  *Id.*  The findings regarding
the testing protocols were not appealed.

## III.  **STANDARD OF REVIEW**

The IDEA provides that "[a]ny party aggrieved by the findings and decision" of the hearings officer "shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy."  20 U.S.C. § 1415(i)(2)(A).

The IDEA requires that the court:

(i)  shall receive the records of the administrative proceedings;
(ii)  shall hear additional evidence at the request of a party; and
(iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(C).  In *Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 206-07 (1982), the Supreme Court explained the court's role in reviewing an administrative decision in an IDEA case:

The fact that § 1415(e)[18] requires that the reviewing court "receive the records of the [state] administrative proceedings" carries with it the implied requirement that due weight shall be given to these proceedings.  And we find nothing in the Act to suggest that merely because

--------

[18]  This provision now appears at 20 U.S.C. § 1415(i).

> Congress was rather sketchy in establishing substantive
> requirements, as opposed to procedural requirements for
> the preparation of an IEP, it intended that reviewing
> courts should have a free hand to impose substantive
> standards of review which cannot be derived from the
> Act itself.  In short, the statutory authorization to grant
> "such relief as the court determines is appropriate"
> cannot be read without reference to the obligations,
> largely procedural in nature, which are imposed upon
> recipient States by Congress.

*See also City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 171 (1997) (citing

*Rowley* for the proposition that the IDEA "contemplates deferential review of state

administrative action").  The "'fact-intensive nature'" of the IDEA proceedings

"'coupled with considerations of judicial economy render a more deferential

approach appropriate.'"  *JG v. Douglas County Sch. Dist.*, 552 F.3d 786, 793 (9th

Cir. 2008) (quoting *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1104 n.4

(9th Cir. 2007)); *see also Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877, 889

n.11 (9th Cir. 2001) (noting that district court erred for not "deferring to the

[hearing officer's] credibility determinations").

      While the court must give the hearings officer's decision "due

weight," the court has discretion to determine how much weight is "due" when

reviewing a hearings officer's decision.  *Capistrano Unified Sch. Dist. v.

Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995); *see also Ms. S. v. Vashon Island

Sch. Dist.*, 337 F.3d 1115, 1126 (9th Cir. 2003) ("The 'due weight' to be given is

15

within the discretion of the appellate court." (*superseded on other grounds by* 20 U.S.C. § 1414(d)(1)(B))).  The degree of deference increases when the hearings officer's findings are "thorough and careful."  *See JG*, 552 F.3d at 793 (quoting *R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 937 (9th Cir. 2007)); *Wartenberg*, 59 F.3d at 891 ("[W]hen exercising its discretion to determine what weight to give the hearing[s] officer's findings, one criterion we have found useful is to examine the thoroughness of those findings.  The amount of deference accorded the hearing[s] officer's findings increases where they are 'thorough and careful.'") (citation omitted).

After the district court carefully considers the administrative agency's decision, "the court is free to accept or reject the [agency's] findings in part or in whole." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1474 (9th Cir. 1993) (quoting *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)).

The party challenging the administrative decision bears the burden of proof when seeking relief from the district court.  *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 910 (9th Cir. 2009).

# IV.  DISCUSSION

## A.    The DOE's Appeal

The DOE appeals the Hearings Officer's determination that Zachary is entitled to disability services and the award of compensatory education.  For the reasons stated below, the court AFFIRMS the Hearings Officer's September 16, 2008 Decision finding Zachary eligible for special education and related services and the award of fifteen months of compensatory education.

### 1.    *The Hearings Officer's Determination that Zachary is Entitled Disability Services*

"To qualify under IDEA, a child must satisfy three criteria: (i) he must suffer from one or more of the categories of impairments delineated in IDEA, (ii) his impairment must adversely affect his educational performance, and (iii) his qualified impairment must require special education and related services." *Wartenberg*, 59 F.3d at 889. The Hearings Officer found that Zachary was qualified for disability services under the OHI category.  Hawaii Administrative Rule ("HAR") § 8-56-25 sets forth the standard for eligibility under OHI:

A student shall be eligible under the category of other health impairment if both of the following are met:

(1) The student has limited strength, vitality or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment, that is due . . . attention deficit

17

disorder or attention deficit hyperactivity disorder . . . ; and

(2) The health impairment adversely affects the student's educational performance.

The DOE disputes the Hearings Officer's determination that Zachary's disability had an adverse affect on his educational performance. Specifically, the DOE argues that, because Zachary performed in the average range on several standardized tests and because Third Grade Teacher Sing testified that he was "making some progress," the Hearings Officer's decision that his disability adversely affected his educational performance is incorrect and, therefore, requires reversal of her disability determination. *See* Pl.'s Br. 7-13.

As an initial matter, because the Hearings Officer considered and discussed the testimony and all of the evaluations, observations, and tests of Zachary at length in reaching her decision that Zachary was eligible for special education under the IDEA, the court affords the Hearings Officer's extremely "thorough and careful" decision a high degree of deference. *See Wartenberg*, 59 F.3d at 891.

The Hearings Officer did not err in finding that Zachary's ADHD adversely affected his educational performance. Based on the record evidence, the Hearings Officer determined that Zachary's disability -- ADHD -- had a

18

significant, adverse effect on his educational performance on a frequent, if not

daily basis, and that, due to his disability, he required specialized instruction and a

smaller, less distracting setting in which to learn.  *See* ARA Ex. 24, at 195.  In

making this determination, the Hearings Officer conducted a thorough analysis of

Zachary's progress in the second and third grade (including the modifications

used) and considered all of the assessments, report cards, observations, input from

home and school, teachers' observations, the Independent Evaluation, and the

information provided by Dr. Denney, and found that, even with supports, Zachary

could not access the general education curriculum.  *Id.* at 190-95.[19]  Significantly,

the Hearings Officer explained that the DOE's failure to find Zachary eligible for

special education stemmed (at least in part) from a fundamental misunderstanding

of ADHD -- that is, "[Mauka Lani] continued to view [Zachary's] disability as a

motivation problem" rather than a symptom of his disability, but the preponderance

of the evidence (including his second grade and third grade teachers' reports)[20]

---

[19]  The Hearings Officer also considered Zachary's ability to pay adequate attention during the tests given by the DOE examiners, but discounted this evidence because "[i]n each testing situation, [Zachary] was working [one-to-one] with the examiner in a quiet room (without distractions or other students) for a very limited period of time.  The individual testing setting is vastly different from" his second grade class.  ARA Ex. 24, at 192.

[20]  The observations of Zachary's teachers, other DOE and Mauka Lani employees, Dr. Denney, and Parents as well as Zachary's report cards support this finding.  *See* Pl.'s Exs. 6, 7, 32, 43, 75; Defs.' Exs. 10, 22, 42, at 633-35.  For example, Second Grade Teacher Samuela observed that Zachary was "inattentive, easily distracted," had "a short attention span," "only
(continued...)

showed that Zachary's "attention was significantly challenged *due to his disability* and this adversely affected [his] ability to think, learn, write, and complete class work and homework on a regular basis."  *See* ARA Ex. 24, at 195 (emphasis added).[21]

   After careful consideration of the Hearings Officer's September 16, 2008 Decision and giving the Decision the deference it is due, the court finds that the Hearings Officer's determination that Zachary qualified for special education and related services under the OHI category is sufficiently supported by the evidence.

   The DOE's argument that under *Ashli C. v. State of Hawaii*, 2007 WL 247761 (D. Haw. Jan. 23, 2007), Zachary does not qualify for special education services because he scored in average levels on some standardized tests and his

---

[20](...continued)
paid attention when he was really interested," "lacked interest in school work," "had attention span problems," and "failed to finish things he starts, on a very frequent basis," *see* Pl.'s Ex. 6; reported that Zachary did well when he was by himself in a non-distracting environment, Defs.' Ex. 22; and found that Zachary had difficulty in class most of the time.  *Id.*  Similarly, Third Grade Teacher Sing observed that Zachary had difficulty focusing and working independently, that he rushed through his work, and that -- despite constant redirection and reminders -- he often did not complete his work.  ARA Ex. 24, at 193-94; *see also* Pl.'s Ex. 75.

[21] *See also* ARA Ex. 24, at 192-93 ("Both of the second grade teachers were not familiar with ADHD or how the symptoms of the disease manifested itself.  Both teachers saw [Zachary] as someone who was capable of doing the work, but was simply not motivated or did not try hard enough. . . .   The evidence shows that during [second] grade, [Zachary's] ADHD regularly affected his ability to process information and remember things he learned. . . .   As such he was off task a lot of the time and unable to complete his assignments.  [Zachary's] difficulties in class were not due to lack of motivation.").

teacher stated he was making "some progress" affords it no relief.  *See* Pl.'s Br. 7-13.

In interpreting the IDEA and HAR § 8-56-25, *Ashli* held that "whether a student's disability 'adversely affects' his 'educational performance' refers to the student's ability to perform in a regular classroom designed for non-handicapped students.  If a student is able to learn and perform in the regular classroom . . . , the fact that his health impairment may have a minimal adverse effect does not render him eligible for special education services."  2007 WL 247761, at *9.  *Ashli* then found that because the student -- also diagnosed with ADHD -- "was in the average range in his cognitive and achievement scores, and was approaching or meeting proficiency in all relevant content areas," he was not eligible for special education services under the OHI category.  *Id.* at *11 (quotation signals omitted).

First, as set forth by the Hearings Officer, the instant case is wholly distinguishable from *Ashli*.  *See* ARA Ex. 24, at 195.  The Hearings Officer explained that, unlike the student in *Ashli* who could access the general education curriculum with supports, Zachary's "ADHD is so severe that the . . . supports and accommodations did not work for him and did not allow him access to the general education curriculum."  *Id.*; *compare with Ashli*, 2007 WL 247761, at *9-11 (finding that student was able to learn in a regular classroom with

accommodations).  Further, as outlined above, the conclusion that Zachary's

ADHD kept him from accessing the general curriculum is based upon sufficient

evidence in the form of various standardized tests, assessments, report cards,

observations, Dr. Denney's report, and input from home and school.

Second, a fair amount of evidence indicates that as of the October

2007 eligibility meeting Zachary was performing *below* average levels in a number

of areas.  *See* ARA Ex. 24, at 190-95.  For example, by the end of the second

grade, Zachary had only made limited progress in literature/reading, writing, and

oral communication, his progress in numbers and operations dropped from

adequate to well below proficiency, and he received a failing grade of "U"[22] for

spelling tests each quarter, Pl.'s Ex. 32;[23] in the third grade, Zachary continued to

fail spelling tests (although he only received half the spelling words his classmates

received), made only limited progress in reading/literature, writing, and math, and

---

[22]  The DOE uses the following proficiency level descriptors in its report cards: "ME" -- Meets with Excellence, "MP" -- Meets Proficiency, "N" -- Approaches Proficiency, "U" -- Well below proficiency.  ARA Ex. 24, at 169 n.4; *see also* Pl.'s Ex. 40 (explaining that a "U" is equivalent to the traditional grade of "F" and "N" is equivalent to either the traditional grade of "C" or "D").

[23]  Second Grade Teacher Samuela noted in a status report dated April 9, 2007 that Zachary showed "non-proficiency" in "weekly spelling, vocabulary and end of section tests," "oral reading fluency," and "STAR tests."  Defs.' Ex. 22.

no progress in science or social studies, Defs.' Ex. 42, at 633-35;[24] Dr. Denney

testified that Zachary's low writing achievement scores negatively affected his

overall classroom performance, ARA Ex. 24, at 183; Pl.'s Ex. 43;[25] and Zachary

scored well below average on the STAR reading assessment on September 14,

2007.[26] Defs.' Ex. 10.[27] Further, the standardized tests that the DOE points to

support their contrary position were taken in a one-on-one setting and do not

address (nonetheless prove) whether Zachary can maintain average performance

---

[24] These are the results from Zachary's third grade, first quarter report card. *See* ARA Ex. 24, at 194; Defs.' Ex. 42, at 633-35. By the end of the second and third quarter of third grade (after the October 2007 eligibility meeting), Zachary also made no progress in math (second quarter) or measurements (third quarter). ARA Ex. 24, at 194.

[25] In conducting his Independent Evaluation of Zachary in August 2007, Dr. Denney found that while most of Zachary's scores were within normal limits he received "borderline" or below average scores on spelling and phonics knowledge. *See* ARA Ex. 24, at 177; Pl.'s Ex. 43.

[26] The STAR reading assessment is a multiple choice test that provides a snapshot of the child's reading level -- the main purpose of the test is to help the child choose library books for independent reading and was not given to determine if Zachary required special education services. *See* ARA Ex. 24, at 181 n.24. Zachary, however, received a .7 on the STAR reading assessment, which indicated that his reading skills were comparable to a kindergarten student after the seventh month of school. *Id.* at 181; Defs.' Ex. 10.

[27] The DOE's argument that this court should disregard the scores from the tests Dr. Denney gave Zachary in February 2008 is utterly unavailing. *See* Pl.'s Br. 11-13, Pl.'s Reply 4-9. First, it does not appear that the Hearings Officer based her September 16, 2008 Decision on the results of Dr. Denney's February 2008 test -- and when asked at the hearing the DOE could not identify any place in the September 16, 2008 Decision that relied upon these results. Further, in reviewing the entire record, the court finds sufficient evidence of Zachary's below average performance to affirm the Hearings Officer's finding regarding Zachary's disability irregardless of the February 2008 test scores.

"in the *regular* classroom setting."  *See Ashli*, 2007 WL 247761 at *9 (emphasis added).

### 2.      *Zachary's Absences*

The IDEA requires that an eligibility team screen out the lack of appropriate instruction as a determinant factor in a child's poor educational performance.  *See* 20 U.S.C. § 1414(b)(5).[28]  The DOE argues that the Hearings Officer erred in finding that Zachary is eligible for special education because the eligibility team was never given the opportunity to determine whether Zachary received "adequate instruction" due to his numerous absences during his third grade year.  *See* Pl.'s Br. 13-17.

First, the DOE has waived this issue.  At the October 2007 eligibility meeting, the DOE agreed that Zachary's special education eligibility was not due to lack of instruction in reading, math, or limited English proficiency.  *See* ARA Ex. 24, at 182, 189; Pl.'s Ex. 44.  The DOE cannot now maintain that it needs more

_____

[28]  20 U.S.C. § 1414(b)(5) states:
> In making a determination of eligibility under paragraph (4)(A), a child shall not be determined to be a child with a disability if the determinant factor for such determination is--
>> (A) lack of appropriate instruction in reading, including in the essential components of reading instruction (as defined in section 6368(3) of this title);
>> (B) lack of instruction in math; or
>> (C) limited English proficiency.

time to determine whether Zachary received "appropriate instruction" when it agreed during the October 2007 eligibility meeting that this was not at issue.

Second, this argument fails because the Hearings Officer properly established that Zachary required special education services as early as October 2007 (only a few months into his third grade year) -- thus, whether or not the eligibility team had an opportunity to examine the effect of Zachary's absences on his level of instruction at the end of his third grade year is irrelevant. *See* ARA Ex. 24, at 195 (finding that October 2007 eligibility team should have found Zachary eligible for special education and related services); *see also id.* ("The . . . accommodations and supports used in 2nd grade and 3rd grade were insufficient to allow Student to access the general curriculum.").[29]

Finally, the Hearings Officer properly considered Zachary's absences' affect on his instruction and found that they were *not* the basis for his poor performance.  Specifically, the Hearings Officer found that Zachary's absences were not an issue because "[d]ue to his disability, [Zachary] was unable to learn in the classroom and access the general education curriculum *even when he was in*

---

[29] Zachary's regular weekly absences did not commence until after Zachary was denied special education services in October 2007.  *See* Pl.'s Ex. 54.

*school*, because he needed, and did not have specialized instruction and related services." *See id.* (emphasis added).[30]

Because the DOE has not met its burden to show that the Hearings Officer erred in finding that Zachary's ADHD adversely affects his educational performance, the court AFFIRMS the Hearings Officer's decision that Zachary is eligible for special education and related services under OHI.

### 3.   *The Hearings Officer's Compensatory Education Award*

"[C]ompensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student." *Reid v. District of Columbia*, 401 F.3d 516, 523

---

[30] The DOE's argument that the Hearings Officer should have provided the eligibility team more time to determine whether the Reading Intervention Program could have been successful in giving Zachary meaningful access to the general education curriculum also affords the DOE no relief. *See* Pl.'s Mot. 21.  Based upon the entire record documenting Zachary's performance, the Hearings Officer found that Zachary's disability negatively affected his performance in a wide variety of subject areas -- not just reading -- and hindered his performance in *all aspects of the school experience*.  *See* ARA Ex. 24, at 195 ("[Zachary's] attention was significantly challenged due to his disability and this adversely affected [his] ability to think, learn, write, and complete his class work and homework on a regular basis."); *see also* Pl.'s Exs. 32 (Zachary's second grade report card), 43 (Dr. Denney's report); Defs.' Ex. 42, at 633-35 (Zachary's third grade report card for the first quarter).  Put differently, the Hearings Officer concluded that Zachary "requires specialized instruction, and a smaller, less distracting setting to learn" in order to have *any* access to the general education curriculum.  *Id.*  Because the Reading Intervention Program alone is not capable of remedying Zachary's lack of access to all aspects of a general education, it was not error for the Hearings Officer to find that none of the accommodations worked even though Zachary was only in the Reading Intervention Program for one month.

(D.C. Cir. 2005) (quoting *G. v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 309 (4th Cir. 2003)); 20 U.S.C. 1415(i)(2)(C)(iii) (stating court "shall grant such relief as the court determines appropriate"); *see also Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1497 (9th Cir. 1994) ("[C]ompensatory education is . . . an equitable remedy, part of the court's resources in crafting 'appropriate relief.'"); *id.* ("There is no obligation to provide a day-for-day compensation for time missed.").  Courts have discretion to craft the equitable relief necessary "'to ensure that the student is appropriately educated within the meaning of the [IDEA].'" *Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1033 (9th Cir. 2006) (quoting *Parents of Student W.*, 31 F.3d at 1497).   It is a "rare case when compensatory education is not appropriate[.]" *Parents of Student W.*, 31 F.3d at 1497.

Based on the DOE's failure to find Zachary eligible for special education services from October 2007 to September 2008, the Hearings Officer ordered compensatory education in the form of weekly, one-on-one private tutoring sessions with Dr. Lynn-Yee[31] or an individual deemed appropriate by Dr. Lynn-Yee and/or Dr. Denney to be tailored to Zachary's unique needs for the term

---

[31] Dr. Lynn-Yee is a Multisystemic Therapist who became Zachary's intensive home therapist at the end of October 2007.  *See* ARA, Transcript at 40-41,135-137.

of fifteen months.  ARA Ex. 24, at 196-98.  The Hearings Officer awarded

compensatory services "to compensate for lost benefit . . . to allow [Zachary] to

increase his skills and knowledge to grade level."  *Id.* at 196.

The evidence supports the Hearings Officer's finding that Zachary

would benefit from weekly, one-on-one-tutoring and that Zachary had fallen

behind in school and required compensatory education to catch up.  Dr. Denney

testified that Zachary required a smaller, less distracting environment in which to

learn.  *See* ARA Ex. 24, at 189; Pl.'s Ex. 34.[32]  Further, Zachary had limited

proficiency in literature/reading throughout the second grade and third grade and

received failing grades in numbers and operations, math, science, and social

studies, and on spelling tests, Pl.'s Ex. 32; Defs.' Ex. 43, at 633-635, and has

scored well below average in reading, which Dr. Denney testified impacted his

overall performance.  *See* ARA Ex. 24, at 181, 183; Defs.' Exs. 10, 22.

This evidence, which the Hearings Officer found to be credible and

persuasive, strongly supports the award of compensatory services in the form of

---

[32]  Additionally, Second Grade Teacher Samuela reported that Zachary did well by
himself when he did not have other distractions (which was often in a class of twenty students),
Pl.'s Ex. 8; ARA Ex. 24, at 191, and that he was very often "inattentive, easily distracted,"
frequently had a "short attention span" and generally has an "attention span . . . problem."  *See*
Pl.'s Ex. 6.  Third Grade Teacher Sing observed that Zachary had difficulty working
independently and remaining on task in the regular classroom even after being redirected, ARA
Ex. 24, at 193-95, and Zachary displayed "adequate attention" when supervised "individually in
a quiet setting" during testing by the DOE examiners.  Pl.'s Ex. 15.

fifteen months of one-on-one tutoring for one day each week.  Given the

thoroughness and carefulness of the Hearings Officer's findings and after careful

review of the record, the court finds that the compensatory services awarded in the

September 18, 2008 Decision are an appropriate equitable remedy for the

educational deficit created by the DOE's failure to provide Zachary a FAPE.

The DOE's argument that the Hearings Officer's award of

compensatory education is improper because she used a "cookie cutter" approach

misstates the law and the facts.  *See* Pl.'s Br. at 21-23.  A compensatory education

award is not invalid simply because it was constructed with the aid of a formula so

long as the award is "appropriate relief . . . designed to ensure the student is

appropriately educated within the meaning of the IDEA."  *See Parents of Student*

*W.*, 31 F.3d at 1497 (stating that compensatory education under IDEA "is not a

contractual remedy, but an equitable remedy"); *see also Friendship Edison Pub.*

*Charter Sch. Collegiate Campus v. Nesbitt*, 532 F. Supp. 2d 121, 123-24 (D.D.C.

2008) ("A compensatory award constructed with the aid of a formula is not *per se*

invalid . . . .  A formula-based award may . . . be acceptable if it represents an

individually-tailored approach to meet a student's unique prospective needs[.]");

*see also Mary McLeod Bethune Day Academy Pub. Charter Sch. v. Bland*, 555 F.

Supp. 2d 130, 136-137 (D.D.C. 2008) (affirming hearings officer's award of

compensatory education based on a formula where hearings officer "conducted a fact-specific inquiry and tailored the award to [the student's] individual needs" by taking into account student's test results and testimony regarding tutoring). Although the Hearings Officer ordered exactly fifteen months of weekly, one-on-one tutoring  -- the same amount of time from Zachary's first eligibility meeting up to the issuance of the September 16, 2008 Decision -- she crafted that award after conducting a fact-specific inquiry of the entire record outlining Zachary's educational performance and tailoring it to his unique needs in order to compensate him for the "lost benefit" from over fifteen months of a lack of access to the general education curriculum which negatively affected his ability to "think, learn, write, and complete his class and homework on a regular basis."  *See* ARA Ex. 24, at 195-97.  On this record, fifteen months of weekly one-on-one tutoring constitutes a valid equitable remedy.

The DOE also argues that the Hearings Officer unlawfully delegated her decision making authority to Dr. Lynn-Yee and Dr. Denney to develop a tutoring program for Zachary because they are both ""person[s] having a personal or professional interest that conflict[] with the person's objectivity in the hearing" pursuant to 20 U.S.C. § 1415(f)(3).  *See* Pl.'s Br. 23.  Section 1415(f)(3) provides:

Limitations on [impartial due process] hearing
    (A) Person conducting hearing[:]  A hearing officer conducting a hearing pursuant to paragraph (1)(A) shall, at a minimum --
        (i) not be --
            (I) an employee of the State educational agency or the local educational agency involved in the education or care of the child; or
            (II) a person having a personal or professional interest that conflicts with the person's objectivity in the hearing[.]

The plain language of this provision only bars a *hearings officer* "conducting a hearing" from having a personal or professional interest that conflicts with her objectivity -- essentially, it is a conflict of interest provision for hearings officers.  *See id.*  Neither Dr. Denney nor Dr. Lynn-Yee conducted the hearing.  Instead, in determining the appropriate equitable remedy as part of the court's discretion in awarding "appropriate relief" pursuant to § 1515(e)(2), *see Parents of Student W.*, 31 F.3d at 1497, the Hearings Officer awarded compensatory education in the form of weekly, one-on-one tutoring "with Dr. Lynn-Yee or an individual deemed appropriate by Dr. Lynn-Yee or [Dr. Denney]" and concluded that "[a]ppropriate tutoring services . . . shall be determined by Dr. Lynn-Yee and/or [Dr. Denney]."  ARA Ex. 24, at 197-98.  Because this delegation is not barred by the statute (and because the DOE has not cited any authority for its

31

position that it is barred), the court finds that the Hearings Officer's award of compensatory education was proper.

The DOE's reliance on *Reid* is misplaced.  *See* Pl.'s Br. 22.  *Reid* held that, under the IDEA, a hearings officer may not authorize an IEP team to reduce or discontinue awards of compensatory services.  *See Reid*, 401 F.3d at 527 ("[A] delegation that permits the [IEP] team to reduce or terminate [the student's] awarded amount of compensatory education exceeds the statute's bounds."); *see also Board of Educ. of Fayette County v. L.M.*, 478 F.3d 307, 318 (6th Cir. 2007) ("We . . . hold that neither a hearing[s] officer nor an Appeals Board may delegate to a child's [IEP] team the power to reduce or terminate a compensatory-education award.").  Here the Hearings Officer merely ordered Dr. Lynn-Yee and/or Dr. Denney to craft a tutoring program suited to Zachary's unique needs, without the authority to reduce or terminate the amount of tutoring sessions.  Accordingly, the instant action is wholly distinguishable from *Reid* and, thus, this argument affords the DOE no relief.

The court, therefore, AFFIRMS the Hearings Officer's award of compensatory education.

**B.   Defendants' Request for Placement at Assets School**

In their Opposition, Defendants request that "the court modify the [Hearings Officer's] award of compensatory education [and grant] placement at

Assets School for one year, in lieu of 15 months of tutoring[.]" *See* Defs.' Opp'n 27-28.  Because Defendants have not appealed the Hearings Officer's refusal to award compensatory education in the form of Assets School, Defendants have waived this issue.  Thus, the court AFFIRMS the Hearings Officer's decision for compensatory services.

## V.  <u>CONCLUSION</u>

Based on the foregoing, the court AFFIRMS the September 16, 2008 Decision.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 5, 2009.



  _/s/ J. Michael Seabright_____
J. Michael Seabright
United States District Judge

*State of Hawaii v. Zachary B., et al.*, Civ. No. 08-00499 JMS/LEK, Order Affirming the Hearings Officer's Decision